

**SIGNED this 04 day of October, 2007.**

_____
**R. Thomas Stinnett**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                    No. 06-14087
                                                          Chapter 7
JEFFERY BRIAN KIDWELL,

       Debtor(s).


Appearances:    Eron H. Epstein, Chattanooga, Tennessee, for Jeffery Brian Kidwell

               Allison Ulin Lynch, Chattanooga, Tennessee, for Sunrise Acceptance, Inc.

The Honorable R. Thomas Stinnett
United States Bankruptcy Judge


## <u>MEMORANDUM</u>

This case is before the court on the motion by the debtor to redeem certain

personal property from Sunrise Acceptance, Inc. (hereinafter "Sunrise"), and the timely

objection thereto by Sunrise.

Jurisdiction is predicated upon 28 U.S.C. § 1334, and this is a core

proceeding pursuant to 28 U.S.C. § 157(b).  This case having been filed after passage of

the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the issues raised

by the parties are controlled by the provisions of the Bankruptcy Code as amended by the

Act.

This memorandum constitutes the court's findings of facts and conclusions

of law.  Fed. R. Bankr. Pro. 7052, 9014.

## FACTS

On August 20, 2005, the debtor financed the $12,254.63 purchase of a 1998

Dodge Dakota Sport with Easy Auto Credit, the predecessor in interest to Sunrise.  On

November 22, 2006, he filed a chapter 13 petition in bankruptcy and submitted a chapter

13 plan contemporaneously with the petition. The debtor's Schedule of Personal Property,

the Schedule of Creditors Holding Secured Claims, and the chapter 13 plan disclosed the

vehicle and valued it at $8,894.37.   The proposed plan provided 12.25% interest on

Sunrise's claim and proposed monthly payments of $200.00.  Objections were filed by the

chapter 13 trustee, for reasons not germane to the issues currently before the court, and

by Sunrise.    At the confirmation hearing, the court overruled the objections without

prejudice to the refiling of the same following a second meeting of creditors.  No new

objections were filed, and the debtor's plan was confirmed on February 9, 2007.  No

changes in the plan were made with respect to Sunrise's claim.  On May 22, 2007, the

debtor voluntarily converted his case to one under chapter 7.  In his statement of intention,

also filed on May 22, 2007, the debtor expressed his intent to reaffirm the debt with Sunrise

in accordance with 11 U.S.C. § 524(c).  The first meeting of creditors was scheduled for

July 6, 2007; however, it was continued to July 19, 2007.  On July 22, 2007, the chapter

2

7 trustee filed a report of no-assets and abandonment of property, and on July 23, 2007, the debtor filed a motion to redeem the vehicle from Sunrise for $3,250.00, utilizing the 20-day passive notice provisions of E. D. Tenn. LBR 9013-1(h)(1)(v).  The debtor attached to the motion a signed, unsworn declaration of value dated July 18, 2007, stating that the value of the vehicle was $3,520.00.[1]  Sunrise timely objected to the debtor's motion, disputing the debtor's valuation of the vehicle and asserting that the debtor failed to amend the statement of intent to reflect an intent to redeem the property.  The court conducted a hearing on the motion and the objection on August 16, 2007.  At the hearing, Sunrise set forth two valuation standards to be considered by the court.  First, the $8,894.37 value provided in the debtor's confirmed plan, and second, valuation based upon the N.A.D.A Official Used Car Guide (the "N.A.D.A.").  The debtor argued that valuation should be based upon the Kelley Blue Book.   At the conclusion of the hearing, the court took the matter under advisement.

<u>ISSUES</u>

The issues presented by the parties are whether the debtor is bound by his statement of intent to reaffirm the debt having failed to amend the statement, and if not, what is the value of the vehicle for purposes of redemption.

<u>ANALYSIS</u>

At the hearing on the debtor's motion to redeem, counsel for Sunrise argued that the debtor failed to timely amend his May 22, 2007, statement of intent to reaffirm and,

---

[1]The court will treat the $3,250 amount set forth in the motion to redeem as a typographical error since the amount set forth in the debtor's Unsworn Declaration of Value attached to the motion, the testimony of the debtor at the hearing, and the exhibits proffered at the hearing reflect a value of $3,520.

therefore, he is not entitled to redeem the vehicle.  In the list of debtor's duties set forth in 11 U.S.C. § 521, the debtor is instructed to file the statement of intent with respect to secured property within thirty days after the date of the filing of a bankruptcy petition, or on or before the date of the meeting of creditors, whichever is earlier.  Clearly, the statement of intent to reaffirm the debt was timely filed since it was filed contemporaneously with the debtor's notice of conversion from a chapter 13 case to one under chapter 7.  Subsection (B) of 11 U.S.C. § 521(a)(2) further provides that the debtor shall perform his intention with respect to such property within thirty days after the first date set for the meeting of creditors.  Since the first date set for the meeting of creditors was July 6, 2007, the debtor had to perform his stated intention by or before August 6, 2007.[2]  The record does not reflect nor did the parties testify whether or not they attempted to negotiate a reaffirmation agreement in the interval of time between the filing of the statement of intent to reaffirm and the first date set for meeting on creditors on July 6, 2007.  Nevertheless, no reaffirmation agreement was filed with the court during that time.  Instead, the debtor filed the motion to redeem on July 23, 2007, prior to the expiration of the 30 days set forth in § 521(a)(2)(B), and one day after the chapter 7 trustee filed his notice of abandonment of property.  Since the debtor had not claimed the vehicle as exempt, the § 722 motion to redeem had to be delayed until after the trustee filed his report of abandonment of property.  Accordingly, the motion to redeem was timely.  Furthermore, Interim Rule 1009(b) of the Federal Rules of Bankruptcy Procedure permits the debtor to amend the statement of intention  ". . . at any time before the expiration of *the period* provided in § 521(a) of the Code.  The debtor shall

---

[2]

The 30th day after the July 6, 2007, meeting of creditors was Sunday, August 5, 2007; therefore, the last day to perform the stated intent was Monday, August 6, 2007.

give notice of the amendment to the trustee and to any entity affected thereby." (emphasis

added). There are three "periods" set forth in § 521(a): the earlier of the 30-day period from

the date of the petition or the date of the meeting of creditors within which the statement

of intent must be filed (11 U.S.C. § 521(a)(2)(A)); the 30-day period after the first date set

for the meeting of creditors within which the debtor must perform his intention with respect

to the property (11 U.S.C. § 521(a)(2)(B)); and the 45-day period following the first date set

for the meeting of creditors within which the debtor is prohibited from retaining possession

of personal property in which a creditor has an allowed claim for the purchase price unless

the debtor enters a reaffirmation agreement or redeems the property (11 U.S.C. §

521(a)(6)).[3] Arguably, therefore, a statement of intent may be amended at any time before

the expiration of any of the three periods described in § 521(a).    In filing a motion to

redeem on July 23, the debtor effectively amended his original intent to reaffirm the

property by expressing a new intent to redeem the property in accordance with § 722.   In

certifying service of the motion to redeem upon Sunrise and the chapter 7 trustee, all of the

interested parties were placed on notice of the fact that the debtor had changed his mind.

Whether couched in terms of an amendment to the statement of intent or in terms of a

motion to redeem, Sunrise received timely notice of the debtor's newly formed intent with

respect to the property, and cannot be heard to have incurred any prejudice because of the

form or style of the expressed intent.  Therefore, the court finds that the debtor's motion to

---

[3]The record contains no evidence of an attempt by the parties to negotiate a reaffirmation agreement during the statutory time period set forth in § 521(a)(2)(B), nor does the record reflect whether the debtor tendered any funds to Sunrise to redeem the vehicle in an attempt to comply with § 521(a)(2)(B), prior to Sunrise's objection.  As of the date of the hearing, no action had been taken by Sunrise to obtain possession of the vehicle, nor had the debtor returned the vehicle to Sunrise.

redeem operates to amend his statement of intent within the time limits mandated by 11 U.S.C. § 521(a) and Interim Rule 1009(b).  *See also  In re Price,* 370 F.3d 362, 374 n.7 (3rd Cir. 2004)(pre-BAPCPA case wherein the court observed that a statement of intention may be amended, that the statute clearly provides that nothing therein may alter the debtor's rights, and even a failure to indicate an intent to redeem or exempt property will not preclude either action).

The next issue raised by the parties concerns the valuation of the collateral. The party seeking redemption has the burden of proof by a preponderance of the evidence. *In re Ard,* 280 B.R. 910, 913 (Bankr. S.D. Ala. 2002).

Sunrise first argued that the debtor is bound by the $8,894.37 value set forth in the confirmed plan.  In response, the debtor's counsel argued that the value assigned to the vehicle in the chapter 13 plan was an attempt to avoid a potential objection by Sunrise to confirmation pursuant to the "hanging paragraph" of § 1325(a).  That section provides that a creditor holding a purchase money security interest securing a debt incurred within the 910-day period preceding the date of the filing of a petition where the collateral consists of a motor vehicle acquired for the debtor's personal use is not bound by the provisions of § 506 of the Code, which permits the debtor to "cram down" the debt by providing for the claim to be secured to the extent of the value of the creditor's interest in the property, and unsecured to the extent that the value of the creditor's interest is less than the amount of the allowed claim.  The parties concede that Sunrise holds a purchase money security interest in the vehicle and that the debt was incurred on August 20, 2005, within 910 days of the November 22, 2006, chapter 13 petition date.   Sunrise offered no contrary explanation or proof refuting the debtor's argument with respect to the assignment

6

of a value of $8,874.37 for the vehicle in the confirmed plan.  Therefore, the court accepts

the debtor's explanation that the " value" assigned to the collateral in the confirmed plan

reflects the claim amount rather than the vehicle's true value as of the date of the petition,

and declines to accept a valuation of $8,894.37 for this vehicle.

Sunrise next argued that calculation of the value of the vehicle must begin

with the N.A.D.A. Guide.  The debtor countered that valuation is best calculated using the

Kelley Blue Book Guide's "private party" value.  The statute addressing a debtor's right to

redeem property from a creditor is set forth in 11 U.S.C. § 722, which provides:

> An individual debtor may, whether or not the debtor has waived the right to
> redeem under this section, redeem tangible personal property intended
> primarily for personal, family, or household use, from a lien securing a
> dischargeable consumer debt, if such property is exempted under section
> 522 of this title or has been abandoned under section 554 of this title, by
> paying the holder of such lien the amount of the allowed secured claim of
> such holder that is secured by such lien in full at the time of redemption.

11 U.S.C. § 722 (2005).

Courts begin their analysis of redemption issues with whether or not this

section can be applied at all where the secured creditor has not filed a claim because most

cases under which the issue of redemption arise originate as  no-asset chapter 7 cases.

*See, e.g.,  In re Steinhaus*, 349 B.R. 694, 703 (Bankr. D. Idaho 2006); *In re Rowe,* 342 B.R.

341, 348-49 (Bankr. D. Kan. 2006); *In re Donald*, 343 B.R. 524, 535-36 (Bankr. E.D.N.C.

2006).   In this case, the court need not address whether Sunrise has an "allowed claim"

because the case originated as a chapter 13 case wherein Sunrise filed a proof of claim

for $9,144.37.  Furthermore, since neither the debtor nor any other party in interest

objected to the claim during the pendency of either the chapter 13 or chapter 7 cases, the

7

claim is "deemed allowed" pursuant to 11 U.S.C. § 502(a).

Valuation of the secured claim is addressed in 11 U.S.C. § 506(a)(1) and (2),

which provide:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

> (2)  If the debtor is an individual in a case under chapter 7 or 13, *such value* with respect to personal property securing an allowed claim shall be determined based on the *replacement value* of such property *as of the date of the filing of the petition without deduction for costs of sale or marketing*. With respect to property acquired for personal, family, or household purposes, *replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined*.

11 U.S.C. § 506(a)(1), (2)(emphasis added).

Since the debtor filed his petition on November 22, 2006, after passage of the

Bankruptcy Abuse Prevention Consumer Protection Act of 2005 (hereinafter "BAPCPA")

which became applicable to cases filed on or after October 17, 2005, the language of the

BAPCPA version of § 506(a) controls.  Unlike the previous version of § 506(a) which failed

to provide a standard for valuation, the new § 506(a) version requires valuation of personal

property based upon the replacement value of the property on the date of the petition.  *See*

*In re Mayland*, 2006 WL 1476927 at *2 (Bankr. M.D. N.C. 2006).          Although the

statute requires valuation as of the date of the petition, the expert witnesses in this case conducted appraisals of the vehicle post-petition. The parties presented no evidence of the vehicle's value as of the petition date, except for the valuation of the claim in the plan for 910-day purposes. The valuation in the plan having been rejected by the court for the reasons stated herein, the court will consider the replacement value at the time of the parties' appraisals, which were post-petition. *Cf. In re Ortiz,* 2007 WL 1176019 at *2 (Bankr. S. D. Fla. Feb. 27, 2007)(court determines that the statute is unclear with respect to when the replacement value is to be calculated, and draws a distinction between "as of the date of the petition" and "at the time value is determined" in § 506(a)(2))

The Code also provides that "replacement value" means "the price a retail merchant would charge for property of that kind considering the age and condition of the property," and no deduction for costs of sale or marketing is included. Clearly, retail value is the measure for replacement value; however, the statute provides no guidance for arriving at the "retail value" other than the provision that age and condition of the property must be considered in the valuation process, and that no deduction for costs of sale or marketing is included. Courts that have addressed this issue to date arrive at results that depend on the overall record and the evidence presented by the parties. *See, e.g., In re Eddins*, 355 B.R. 849 (Bankr. W.D. Okla.2006)(N.A.D.A. retail value is the base point for determining § 506(a) value in a chapter 13 cram-down); *In re Coleman*, 2007 WL 23763722 at *4 (Bankr. W.D. Mos., Aug. 2, 2007)(valuation is determined by starting with the N.A.D.A "retail value," less the cost of putting the vehicle in "clean" condition as defined by N.A.D.A., less 5%; however, if this formula is not appropriate under the circumstances of a particular case, parties may submit further evidence of actual value); *In re Mayland,* 2006 WL

1476927 at *2 (Bankr. M.D. N.C., May 26, 2006)(reliance upon pre-BAPCPA practice of

beginning the calculation of replacement value as 90% of N.A.D.A. retail value, and under

current § 506(a)(2), including adjustments for costs required to restore vehicle to saleable

condition);*In re Brown*, 2006 WL 3692069 (Bankr. D. S.C., April 24, 2006)(court relies upon

appraiser's report submitted by creditor rather than accepting debtor's market report);  *In*

*re Ortiz*, 2007 WL 1176019 at *3 (Bankr. S. D. Fla. Feb. 27, 2007)(Court averaged the

debtor's expert's $10,500 retail value with a value of $11,841.67, which was calculated by

creditor's expert as the N.A.D.A.  value plus quotes from two dealers, divided by three, to

arrive at a retail price of an identical car as $11,506.25, and then reducing the value by the

amount of the actual cost of repairs to the vehicle); *In re Clark* (2007 WL 671346 (Bankr.

N.D. Ohio Feb. 27, 2007)(court determined that the replacement value of the vehicle based

on retail price that a retail merchant would charge debtors to acquire it is the average of the

debtors' retail value and the creditor's retail value, considering the evidentiary shortcomings

of both parties).

   In this case, both parties presented expert witnesses who testified concerning

the condition of the vehicle and the justification for relying upon the different pricing guides

in determining the value.  The debtor also testified concerning the condition of the vehicle

and his opinion concerning its value.  According to the debtor, the vehicle is in "good" but

not "excellent" condition, and needs new tires and detailing.  In his opinion, the vehicle has

a value of $3,520.

   The debtor's expert witness testified that he had been employed in the

automobile industry for 10-15 years, and that conducting vehicle appraisals constituted a

regular part of his duties.  He testified that the vehicle in question was in "fair" to "good"

condition, but that since it lacked an automatic transmission, he reduced the value accordingly,  arriving at a value of $3,000 - $3,500 based upon the Kelley Blue Book's private party sales valuation.  When questioned concerning his preference for using the Kelley Blue Book rather than the N.A.D.A. in pricing the vehicle, he acknowledged that, like the N.A.D.A. Guide, the Kelley Blue Book contained "retail" values.  However, in his opinion, the "private party" sale values of the Kelley Blue Book more closely resemble actual retail cash sales.  In contrast, dealers use the "retail" values as a beginning price when selling vehicles for credit rather than cash.

The expert witness for Sunrise was a manager from a car lot which sold previously-owned vehicles.  He based his calculation upon the N.A.D.A. Guide, and proclaimed the debtor's vehicle as one in good shape and good condition. He also deemed the tires in good condition.  With reductions for high mileage ($975) and for lack of automatic transmission ($275), the witness expressed the opinion that the value of the vehicle was $4,725.

The value required by the Code is termed "retail value" and the documents presented by the parties through their witnesses use the same terminology but arrive at different valuation amounts.  Since 11 U.S.C. § 722 requires the debtor to pay the redemption price in full at the time of redemption, redemption obviously constitutes a cash rather than a credit transaction.  In considering the testimony of the experts and their personal experiences in the automobile industry as well as with the practice of retail automobile sales, the court finds the testimony of the debtor's expert more convincing with respect to the distinctions between values assigned to automobiles in connection with cash versus credit transactions.  The court is satisfied that the debtor's expert witness's

explanation of the Kelley Blue Book "private party" valuation is more in alignment with the standard of § 506(a)(2) requiring replacement value based upon the retail price a retail merchant would charge the debtor.  In this case, that value would be $3,520, which is the lump-sum amount that the debtor must pay Sunrise to redeem the vehicle in accordance with 11 U.S.C. § 722.  The court will enter a separate order granting the motion to redeem.

# # #